UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 03-6442(DSD/JSM)


Doris M. Gohman,

       Plaintiff,

v.                                                            **ORDER**

Equifax Information Services, LLC,

       Defendant.


      John H. Goolsby, Esq., Thomas J. Lyons, Esq., Consumer
      Justice Center, 342 County Road D E, Little Canada, MN
      55117, counsel for plaintiff.

      Lewis P. Perling, Esq. and Kilpatrick Stockton - Atlanta,
      1100 Peachtree Street, Suite 2800, Atlanta, GA 30309 and
      Robert W. Murnane, Esq. and Murnane Brandt, 30 East
      Seventh Street, Suite 3200, St. Paul, MN 55101, counsel
      for defendant.



      This matter is before the court upon a motion for summary
judgment by defendant Equifax Information Services, L.L.C.  Based
upon a review of the file, record and proceedings herein, and for
the reasons stated, the court grants defendant's motion in part.



**BACKGROUND**

      This is an action under the Fair Credit Reporting Act
("FCRA").  Defendant Equifax Information Services, L.L.C.
("Equifax"),[1] is a credit reporting agency ("CRA").  Equifax stores

--------------------------------------------------

     [1]  Equifax is incorrectly named as "Equifax d/b/a Equifax
Credit Services, Inc.," in this action.

plaintiff Doris M. Gohman's credit file. An affiliate CRA, CSC Credit Services, Inc. ("CSC"), owns and maintains the file. Defendant Wells Fargo & Co. ("Wells Fargo") is a financial institution. Plaintiff obtained a student loan from Wells Fargo in 1994 to fund her daughter's education. In 1998, her daughter died and the loan was forgiven. In November 2002, plaintiff applied for a retail account at a store and was denied credit. Shortly thereafter, plaintiff learned that the credit denial was a result of her reported status as "consumer deceased."

Plaintiff called Equifax and was told that Wells Fargo was the source of the erroneous "consumer deceased" notation. She did not submit a dispute to Equifax. Instead, plaintiff contacted Wells Fargo and was assured that her deceased status would be removed from the account. Plaintiff has presented evidence that Wells Fargo sent a "universal data form" to Equifax in December 2002 updating plaintiff's file. Equifax cannot confirm that it received Wells Fargo's communication, but alleges that if it had, it would have forwarded the notice to CSC. Plaintiff alleges that she was unable to obtain credit at a car dealership on August 14, 2003, due to the deceased notation on her record.[2] The credit report sent to the car dealership indicated that it was "produced by Equifax."

_____

[2] Equifax disputes that plaintiff was denied credit solely due to the erroneous deceased notation. It also disagrees with plaintiff's allegation that the car dealership accused her of identity fraud and threatened to call the police.

(See Lynch Dep. Ex. 4.)  Plaintiff contacted CSC about the problem and CSC removed the Wells Fargo account from her file in October 2003.  (See Compl. Ex. 37.)  No other account in her file ever indicated that she was deceased.

On December 10, 2003, plaintiff filed this action, alleging violations of FCRA, credit defamation and "tortious interference with credit expectancy."   (See Compl. ¶¶ 108-23, 140-48.) Defendant Equifax now moves for summary judgment on all claims.

**DISCUSSION**

**I.   Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) **(quoting Fed. R. Civ. P. 56(c)).** A fact is material only when its resolution affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could

cause a reasonable jury to return a verdict for either party.  See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the non-moving party. See id. at 255.  The non-moving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial.  See Celotex, 477 U.S. at 324.  Moreover, if a plaintiff cannot support each essential element of her claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.  Id. at 322-23.

## II.  FCRA Claim

Under FCRA, credit reporting agencies ("CRAs") such as Equifax are required to maintain reasonable procedures calculated to ensure "maximum possible accuracy" of consumer credit reports.  15 U.S.C. § 1681e(b).[3]  To establish a section 1681e(b) claim, plaintiff must

---

[3]  Some courts that have addressed claims against CRAs who do not own and are not responsible for a plaintiff's credit file have found that section 1681e does not apply.  See Zotta v. NationsCredit Fin. Servs. Corp., 297 F. Supp. 2d 1196, 1206 (E.D. Mo. 2003) (Equifax not proper party for § 1681e claim because it does not own or maintain plaintiffs' credit files); Stern v. Credit Bureau of Milwaukee, 315 N.W.2d 511, 516 (Wis. Ct. App. 1981) (no cause of action against CRA that did not control plaintiff's credit file and did not create inaccuracy).  Although the court finds such case law instructive, it declines to hold that Equifax is not subject to section 1681e merely because it does not own or maintain plaintiff's file.  Section 1681e(b) is not limited to CRAs who own
(continued...)

present evidence that (1) Equifax failed to follow reasonable procedures intended to assure the accuracy of its reports, (2) it reported inaccurate credit information about plaintiff, (3) plaintiff suffered harm and (4) Equifax's failure to follow reasonable procedures was the cause of plaintiff's harm. Cassara v. DAC Servs., Inc., 276 F.3d 1210, 1217 (10th Cir. 2002) (citing Whelan v. Trans Union Credit Reporting Agency, 862 F. Supp. 824, 829 (E.D.N.Y. 1994)).

Equifax argues that plaintiff has failed to show that it did not follow reasonable procedures, that she suffered actual damages and that she is entitled to punitive damages.

A.    Reasonableness of Procedures

Whether a CRA followed reasonable procedures when it generated an inaccurate credit report is "a jury question in the overwhelming majority of cases." Cahlin v. Gen. Motors Acceptance Corp., 936 F.2d 1151, 1156 (11th Cir. 1991); see Dalton v. Capital Associated Indus., Inc., 257 F.3d 409, 418 (4th Cir. 2001) (jury question where defendant had no procedures in place to instruct subvendors on appropriate sources for reliable information); Cousin v. Trans

---

[3](...continued)
and maintain credit files. Instead, it covers all CRAs who prepare credit reports. It is undisputed that Equifax is a CRA. Further, plaintiff has brought forth evidence showing that Equifax prepared her consumer reports, including the report furnished on August 14, 2003. (See Lynch Dep. Ex. 4.) Therefore, section 1681e(b) requires Equifax to "follow reasonable procedures to assure maximum possible accuracy" of the information on her report.

<u>Union Corp.</u>, 246 F.3d 359, 368-69 (5th Cir. 2001) (reasonableness of procedures was properly before jury where procedures are not justified by defendant).  Nonetheless, the plaintiff "must minimally present some evidence from which a trier of fact can infer that the [CRA] failed to follow reasonable procedures." <u>Stewart v. Credit Bureau, Inc.</u>, 734 F.2d 47, 51 (D.C. Cir. 1984). A CRA may be liable under section 1681e if it had notice of credit report inaccuracies before preparing the report.  See <u>Henson v. CSC Credit Servs.</u>, 29 F.3d 280, 285 (7th Cir. 1997) (procedures not unreasonable if no prior notice from consumer that information obtained from official court records may be inaccurate); <u>Barron v. Trans Union Corp.</u>, 82 F. Supp. 2d 1288, 1296 (M.D. Ala. 2000) (factual dispute as to whether CRA was on notice concerning alleged credit report inaccuracies precludes summary judgment).

Plaintiff argues that Equifax's procedures are unreasonable because (1) it delegated to CSC its duty to update and review credit file changes, (2) it failed to ensure that changes were made to the credit file and (3) it failed to detect "gross inconsistences" in plaintiff's credit file.  Plaintiff's first allegation is without merit because it is undisputed that CSC owns plaintiff's credit file and has the duty to maintain it.  In other words, Equifax did not unreasonably "delegate" its duty to maintain plaintiff's credit file because plaintiff has made no showing that Equifax ever had such a duty.

As to plaintiff's remaining allegations, Equifax responds that its existing procedures are adequate and reasonable.  If CSC owns the credit file, Equifax's procedures include directing consumer disputes to CSC via overnight mail and submitting updated account information from creditors to CSC.  CSC then manually updates customer accounts to reflect new information.  According to the agreement between Equifax and CSC, Equifax is not permitted to reinvestigate consumer disputes.

The court finds that it is a question for the fact-finder whether Equifax unreasonably failed to ensure that changes were made to plaintiff's credit file.  Although plaintiff never filed a dispute with Equifax, she contacted it concerning the erroneous deceased notation and was referred to Wells Fargo.  Plaintiff has also brought forth evidence showing that Wells Fargo sent Equifax a written notice that the deceased status in her filed needed to be changed.  Plaintiff has therefore demonstrated that Equifax was on notice that her file contained a significant inaccuracy.  A reasonable jury could find that Equifax unreasonably failed to check or follow-up with CSC before preparing a report that contained the inaccuracy.

Plaintiff has also raised a disputed issue as to whether Equifax unreasonably failed to detect and inquire after a "gross inconsistency" in her credit file.  Plaintiff points to the fact that only her Wells Fargo account contained the deceased notation,

while numerous other accounts were opened or remained active. She alleges that despite such inconsistencies, Equifax prepared at least five consumer reports with the inaccurate deceased notation. Equifax responds that the court in Anderson v. Trans Union, LLC, found that the defendant did not have a duty to detect or inquire after an erroneous "deceased" notation. See 345 F. Supp. 2d 963, 971 (W.D. Wis. 2004) (procedures not unreasonable solely because CRA did not catch erroneous "deceased" notation in one tradeline). However, the court in Anderson specifically noted that the deceased status was caused by the creditor's non-standard "flag" on the account. The flag resisted all the usual efforts to delete it and remained hidden even to the customer reviewing the account. Id. at 967, 971. By contrast, plaintiff's deceased status was caused by a standard notation that was plainly inconsistent with other information in her file. Such inconsistencies could lead a jury to infer that Equifax's failure to detect them was unreasonable. See McKeown v. Sears Roebuck & Co., 335 F. Supp. 2d 917, 930-31 (W.D. Wis. 2004) (summary judgment not warranted where erroneous deceased notation was inconsistent with other accounts); Sheffer v. Experian Info. Solutions, Inc., 2003 WL 21710573, at *2 (E.D. Pa. July 24, 2003) (jury could infer unreasonable procedures from inconsistent deceased notations).

**B.   Actual Damages**

Plaintiff may recover actual damages for any negligent violation of FCRA by Equifax.  See 15 U.S.C. § 1681o(a).  "Actual damages" include damages for humiliation, mental distress or injury to reputation and creditworthiness, even if plaintiff has suffered no out-of-pocket losses.  Cousin, 246 F.3d at 369 n.15; see Dalton, 257 F.3d at 418; Casella v. Equifax Credit Info. Servs., 56 F.3d 469, 474 (2d Cir. 1995).  Plaintiff points to affidavits from her doctor and husband to support her allegation that she suffered stress, loss of sleep and aggravation of existing medical conditions as a result of the inaccurate credit reports prepared by Equifax.  Such damages are actionable under FCRA.  See Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995) ("actual damages" under FCRA includes emotional distress and humiliation); McKeown, 335 F. Supp. 2d at 932-34 (denying summary judgment on actual damages claim of mental distress, loss of sleep, nervousness and injury to reputation, work, family and sense of well being).  Contrary to Equifax's argument, plaintiff's alleged damages occurred, at least in part, after Equifax received notice of the inaccurate information and prepared another credit report. For these reasons, plaintiff has met her initial burden to show damages and causation.  Based on all of the above, plaintiff has presented evidence to support each element of her section 1681e(b) claim.  Therefore, summary judgment is not warranted on that claim.

### C.    Punitive Damages

Even if plaintiff could not show actual damages, however, she may be entitled to punitive damages if Equifax willfully violated FCRA.   See 15 U.S.C. § 1681n(a).   A willful violation "requires knowing and intentional commission of an act the defendant knows to violate the law."   Phillips v. Grendahl, 312 F.3d 357, 370 (8th Cir. 2002).   Plaintiff alleges that Equifax willfully violated FCRA by (1) failing to take action after receiving the "universal data form" from Wells Fargo, (2) failing to make a record of communications with Wells Fargo and CSC and (3) failing to require CSC to make changes to her file within a particular time period. As to plaintiff's first allegation, she has made no showing that Equifax did not follow its usual procedure and forward Wells Fargo's update to CSC.   As to her remaining allegations, plaintiff has not shown how Equifax knew that such actions may be unlawful or intentionally committed those acts.   For those reasons, plaintiff has failed to show that Equifax willfully violated FCRA. Therefore, summary judgment is warranted on plaintiff's punitive damages claim.

### III. State Claims

Equifax asserts that FCRA preempts plaintiff's state law claims for credit defamation and tortious interference with credit expectancy.   Equifax relies on 15 U.S.C. § 1681h(e), which states in full:

10

> except as provided in sections 1681n and 1681o
> of this title, no consumer may bring any
> action or proceeding in the nature of
> defamation, invasion of privacy, or negligence
> with respect to the reporting of information
> against any consumer reporting agency, any
> user of information or any person who
> furnishes information tot a consumer reporting
> agency, based on information disclosed
> pursuant to section 1681g, 1681h, or 1681m of
> this title, or based on information disclosed
> by a user of a consumer report to or for a
> consumer against whom the user has taken
> adverse action, based in whole or in part on
> the report except as to false information
> furnished with malice or willful intent to
> injure such consumer.

In response, plaintiff argues that section 1681h(e) does not apply because her claims are not based on disclosures pursuant to sections 1681g, 1681h or 1681m.  See id.  Those sections govern required disclosures to consumers and not disclosures to third parties.  However, plaintiff testified that Equifax disclosed her credit information to her when she called and requested such a disclosure.  (See Gohman Dep. at 105-06 (July 20, 2004); Compl. Ex. 28.)  Based on her testimony, the disclosure was provided as required by section 1681g(a) and included the erroneous information that is the basis of her section 1681e(b) claim.  Therefore, section 1681h applies.[4]  See Thornton v. Equifax, Inc., 619 F.2d

---

[4]  Other courts have found that section 1681h(e) preempts state law claims even in the absence of disclosures made pursuant to section 1681g, 1681h or 1681m.  See, e.g., McKeown, 335 F. Supp. 2d at 942-43.  However, the court declines to adopt this position for two reasons. First, the text of section 1681h(e) unambiguously requires such a disclosure for its preemptive effect to apply.
(continued...)

700, 703-04 (8th Cir. 1980); Graham v. CSC Credit Servs., Inc., 306 F. Supp. 2d 873, 882 (D. Minn. 2004) (later disclosure by defendant pursuant to section 1681g entitles it to "qualified immunity" under section 1681h(e)).

Plaintiff also argues that section 1681h does not preempt her state law claims because Equifax acted with malice or willful intent to injure her when it "unreasonably" adopted procedures that led to the inaccurate credit reports.   False information is reported with "malice or willful intent to injure" for purposes of section 1681h(e) if done "'with knowledge that it was false or with reckless disregard of whether it was false or not.'" Thornton, 619 F.2d at 705 (quoting New York Times v. Sullivan, 376 U.S. 254, 279-80 (1964)); see also Weinberger v. Maplewood Review, 668 N.W.2d 667, 673 (Minn. 2003).   Malice is more than mere negligence "and probably even more than highly unreasonable conduct." Hirman v. Rogers, 257 N.W.2d 563, 566 (Minn. 1977).   Here, plaintiff has pointed only to alleged unreasonable conduct by Equifax.   Such conduct alone is insufficient to show malice or willful intent to injure.   Furthermore, plaintiff testified in her deposition that she does not allege that Equifax had any malice towards her or

---

[4](...continued)
Second, the Eighth Circuit has held that FCRA "'does not preclude an action at common law except where information that would give rise to a cause of action is obtained by the complainant pursuant to the provisions of the Act.'" Thornton, 619 F.2d at 703 (quoting Hood v. Dun & Bradstreet, Inc., 486 F.2d 25, 32 (5th Cir. 1973)).

willful intent to injure her.  (<u>See</u> Gohman Dep. at 116-17 (July 20, 2004).)  Therefore, summary judgment is warranted on plaintiff's state law claims.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that:

1.   Defendant's motion for summary judgment [Docket No. 96] is granted in part.

2.   Defendant's  motion  for  leave  to  file  supplemental authority and memorandum [Docket No. 109] is granted.

Dated:  July 21, 2005

s/David S. Doty
David S. Doty, Judge
United States District Court